IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SUNCOR STAINLESS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 23-00402-JB-B |
| | ) |
| RAM TAIL LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court are the parties' briefings on the construction of disputed claim terms in U.S. Patent No. 7,198,253 ("the '253 patent"). The relevant pending filings are as follows:

> Suncor Stainless, Inc.'s ("Suncor") Opening Claim Construction Brief (Doc. 45);
> Ramtail's Brief in opposition (Doc. 48);
> Ram Tail, Inc.'s ("Ram Tail") Opening Claim Construction Brief (Doc. 46); and
> Suncor's Brief in opposition (Doc. 47).

Pursuant to *Markman v. Westview Instruments*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), the Court held a hearing on November 18, 2024, to determine the meaning or construction of the patents' claims, as a matter of law. The Court hereby construes the disputed claim terms as set out below.

### I. BACKGROUND

Plaintiff Suncor Stainless, Inc.'s asserted U.S. Patent No. 7,198,253 was issued April 3, 2007, and is entitled "Wire Rope Connectors and Tensioners for Deck Railing Systems" (the "253 Patent"). (Doc. 45-1). As the patent describes, the field of the invention "relates to railing systems, and more particularly to easily configurable fixtures for attaching and/or tensioning cabling, rope or wire rope to surfaces such as those of railing corner posts." (*Id*.).

There is one independent claim 1, which contains all of the disputed claim language, but for one term that is subject of Ram Tail's claim indefiniteness assertion, from dependent claim 16, discussed below.

The claims and figures of the '253 Patent are directed to the metal hardware parts that connect the ends of the wiring to posts/structures, as shown in, e.g., Figures 1, 5 and 6:



The key claim construction dispute between the parties turns on the proper claim construction relating to the following parts of the claimed invention as shown in Figure 1: Part 3 is the "swivel." Part 5 is the "cylindrical member" as claimed (a.k.a. "tubular body" in the specification). (*Id*.). It is undisputed that there are two embodiments disclosed in the specification regarding these parts.

One is as depicted in Figure 1, where the swivel and cylindrical member attach by threading. (*Id*.). In the detailed description of the patent, the cylindrical member is referred to as "tubular body 5," and it is described as having "a threaded end 17 to engage a threaded end of the stud 18" and having "a threaded end 15" that is engaged by "a threaded stud 9." (Doc. 45-1). In addition to this description, the '253 patent also notes that "[t]hreaded end 15" is preferably "internally threaded" to accept the "threaded stud 9", but it could also be externally threaded if the threaded stud used an internal thread. (*Id*.). Finally, the '253 patent notes that "[a]fter

engaging threaded stud 9 with threaded end 15, the thread positions can be locked mechanically or with a suitable liquid thread locking compound." (*Id*.). The parties refer to this embodiment as a "Two Piece Design." (Doc. 47).

After these separate parts are screwed together, the patent instructs that the parts are to be "locked" to "firmly bond" the two pieces as one: "After engaging threaded stud 9 with threaded end 15, the thread positions can be locked mechanically or with a suitable liquid thread locking compound, so as to firmly bond the swivel 3 to the tubular body 5. (*Id*.). Once so locked, the combined swivel/cylindrical member unit must be capable of rotating as one within the mounting plate as claimed. (Doc. 45-1: "mounting plate including a center aperture through which the threaded swivel and cylindrical member are engaged, and an internal recess for rotatably receiving the threaded swivel to allow the cylindrical member and threaded swivel to freely rotate with respect to the mounting plate").

The '253 Patent then continues to describe an alternative embodiment where instead of firmly bonding two pieces mechanically or with glue, the "the swivel 3 and tubular body 5 could comprise one single part." (*Id*.). The parties call this embodiment the "One-Piece Design."

The question before the Court raised by the parties' claim construction assertions as to several claim terms is whether the asserted claims are properly construed to cover both embodiments, as Suncor asserts, or only the Two-Piece Design, as Ram Tail asserts. Ram Tail argues that since the claim language requires that the swivel and cylindrical member must "engage," and Ram Tail contends that "engage" definitionally[1] requires two parts, this equates

---

[1] Ram Tail cites a lay dictionary as extrinsic evidence for "engage".

3

to a surrender of the One-Piece Design. (Doc. 46). In response, Suncor argues that "engage" can and should encompass the fixed attachment, and demonstrates that in the file history, the Examiner in a rejection equated the same terms of the claimed invention to a single combined part that rotates in a mounting plate in the prior art to McCown (US Patent No. 3,652,949) (inset McCown Fig. IV) (Examiner: "McCown teaches a swivel 6, 8, engaging the cylindrical member [5]; a mounting plate 1 including a center aperture through which the threaded swivel and cylindrical member are engaged").[2] (Doc. 47).



FIG. IV

Ram Tail, on the other hand, points to language where the applicant responded to that rejection and distinguished McCown with language including "[i]n Applicants' system, once a swivel is inserted through the mounting plate from the underside, it is threaded into the lower end of a tensioning assembly's cylindrical member and locked, either by a locking compound, swaging or a left-hand thread together."  (Doc. 48).

Suncor pointed out at the claim construction hearing, that this reference to the preferred Two-Piece Design embodiment by the Applicant in the file history was in a particular context of distinguishing McCown not on the basis of whether the swivel and cylindrical member were two pieces or one piece, but based on the fact that the Suncor '253 Patent requires the resulting locked structure to be rotatable in the mounting plate for operation, whereas McCown was a

---

[2] A USPTO patent examiner is considered to be one of ordinary skill in the art. *Realtime Data, LLC v. Morgan Stanley,* 875 F. Supp. 2d 276, 284 (S.D.N.Y. 2012), *ajfd,* 554 F. App'x 923 (Fed. Cir. 2014) *(citing St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.,* 412 Fed.Appx. 270,276 (Fed. Cir. 2011); *In re Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002)). "Statements made by the examiner relating to how he or she understands a certain term are thus intrinsic evidence to which the court may refer when construing terms." *Id.*

lamp and must not rotate "at all costs." (Doc. 49). Thus, the Applicant stated "[w]hile McCown's system must avoid rotation at all costs, since the suspended lamp would fall out or become detached. In Applicants' apparatus, rotatability is to be preserved, or else tensioning assembly would not function properly." (Doc. 48-1).

## II.     Legal Standards

The construction of a patent and the terms contained therein is an issue to be determined by the Court, as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), affirmed, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In construing a claim, the court determines "the meaning and scope of the patent claims asserted to be infringed." *Id*. Construction of the claims is the first step in a "two-step analysis" of infringement. *Elekta Instrument S.A. v. O.U.R. Scientific Int'l., Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000).

"In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for this is the language that the patentee chose to use to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.' 35 U.S.C. § 112, ¶ 2." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir.2001); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005)("the claims themselves provide substantial guidance as to the meaning of particular claim terms"). "The terms used in the claims bear a heavy presumption that they mean what they say and have the ordinary meaning that would be attributed to those skilled in the relevant art." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) To ascertain the meaning of the claims, a court primarily should consider three things: the language of the patent claims, the patent specification, and the prosecution history. *Insituform Tech., Inc. v. Cat Contracting, Inc.*, 99

F.3d 1098, 1105 (Fed. Cir. 1996); *Markman*, 52 F.3d at 979. The claim language itself defines the scope of the claim, and "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language." *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1552 (Fed. Cir. 1997). Thus, a Court should construe claim terms as having the meaning ascribed to them by one of ordinary skill in the art unless the patent specification or prosecution history indicates a contrary meaning. *Phillips*, 415 F.3d at 1313 ("the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *see also Northern Telecom Ltd. v. Samsung Electronics*, 215 F.3d 1281, 1287 (Fed. Cir. 2000) ("Claim language is given its ordinary and accustomed meaning except where a different meaning is clearly set forth in the specification or where the accustomed meaning would deprive the claim of clarity.")

Although claims must be read in view of their specification, the Federal Circuit has cautioned against limiting the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997) ("While examples disclosed in the preferred embodiment may aid in the proper interpretation of a claim term, the scope of a claim is not necessarily limited by such examples"); *Intervet American, Inc. v. Kee–Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("limitations appearing in the specification will not be read into claims, and that interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper' ") (citation omitted). Similarly, both the Federal Circuit and the Supreme Court

have cautioned against using the specification to expand the scope of the claims. *Johnson v. Johnston*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (citing *McClain v. Ortmayer*, 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800 (1891) ("The claim is the measure of [that patentee's] right to relief, and while the specification may be referred to, to limit the claim, it can never be made available to expand it.")).

Beyond the specification, the Court may also look to the patent's prosecution history if it is a part of the record in the case. *Markman*, 52 F.3d at 980. "This 'undisputed public record' of proceedings in the Patent and Trademark Office ["PTO"] is of primary significance in understanding the claims." *Id.*; *Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how PTO and inventor understood the patent claims.") However, although the prosecution history "can and should be used" when construing the claims, it "cannot 'enlarge, or diminish or vary' the limitations in the claims." *Id*. (citation omitted).

In addition to the intrinsic record, the Court may also consider extrinsic evidence such as dictionaries, encyclopedias, treatises and inventor and expert testimony to assist it in understanding the technology at issue or in determining the meaning or scope of terms in a claim. *Phillips*, 415 F.3d at 1317–18. While such evidence is generally considered less reliable than the intrinsic record (for a variety of reasons), the Court is permitted to consider it. *Id*. at 1318–19.

### III.   Construction of the Disputed Claim Terms

After careful consideration of the parties' arguments and the intrinsic and extrinsic evidence, the Court adopts the following claim constructions:

A.  "A cylindrical member including a first threaded end and a second threaded end"

| Suncor's Proposed Construction | Ram Tail's Proposed Construction |
|---|---|
| Ordinary meaning, no construction necessary | a cylindrical shaped tube, hollow on the inside, with threading on two distinct portions that encompass the two furthest portions of the cylindrical tube from the center wherein the threading can be engaged from each end |

The Court is persuaded by Suncor that all that is required of this element is a "cylindrical member," which has a "first threaded end" and a "second threaded end."  Ram Tail's construction, requiring the threading at the "furthest portions" and with engagement of said threading at "each end," is an effort to limit the claim to Figure 1 and the Two-Piece Design.  But Ram Tail has not carried its heavy burden to overcome the plain and ordinary meaning by reading in limitations that would exclude the One-Piece embodiment. See e.g. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) (Courts "normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification" and "[a]t leas[t] where claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence [to] the contrary.").  Accordingly, the Court will construe this term to have its plain and ordinary meaning.

B.  "A threaded swivel engaging the cylindrical member"

| Suncor's Proposed Construction | Ram Tail's Proposed Construction |
|---|---|
| A swivel that can be separate from or unitary with the threaded cylindrical member, with separate or common threading, respectively | A swivel that includes a threaded portion where the threaded swivel is fit with the cylindrical member |

The dispute as to this term also turns on whether the claim covers both embodiments disclosed in the specification, as Suncor asserts, or only the Two-Piece design, as Ram Tail asserts.

In the Two-Piece Design embodiment, the swivel and cylindrical member engage by their separate respective threading.  In the One-Piece Design embodiment, the swivel and the cylyndrical member are engaged as <u>one combined part</u> so they logically would have shared or common threading.  Whereas Ram Tail has not overcome the presumption that both embodiments are covered, the Court will construe the term as "A swivel that can be separate from or unitary with the threaded cylindrical member, with separate or common threading, respectively."

### C. "A tensioning assembly being an independent component from the attaching means and the rigid body"

| Suncor's Proposed Construction | Ram Tail's Proposed Construction |
|---|---|
| Ordinary meaning, no construction necessary | A tensioning assembly that is a separate component not dependent upon the attaching means and the rigid body |

The Court agrees with Suncor that Ram Tail's proposed construction is unnecessary.  The term "independent component" does not need to be explained to the jury as a "separate component" or "not dependent." See *Encap LLC v. Oldcastle Retail Inc.*, 2012 WL 2339095, at *9 (E.D. Wis. June 19, 2012) ("Claim construction is not intended to allow for needless substitution of more complicated language for terms easily understood by a lay jury.").  Accordingly, the Court will construe this term to have its plain and ordinary meaning.

### D. "The tensioning assembly being fully rotatably attached to a support surface"

And closely related term:

**"A mounting plate including a center aperture through which the threaded swivel and cylindrical member are engaged . . . and an internal recess for rotatably receiving the threaded swivel to allow the cylindrical member and threaded swivel to freely rotate with respect to the mounting plate"**

| Suncor's Proposed Construction | Ram Tail's Proposed Construction |
|---|---|
| The swivel/cylindrical member is capable of being fully rotatable within the mounting plate when the mounting plate is attached to a support surface | Ordinary meaning, no construction necessary or where the tensioning assembly is fully rotatably attached to a support surface such as a railing post or a wall |

| Suncor's Proposed Construction | Ram Tail's Proposed Construction |
|---|---|
| The swivel/cylindrical member is capable of being fully rotatable within the mounting plate when the mounting plate is attached to a support surface | A mounting plate with a center aperture that is engaged by the threaded swivel and the cylindrical member |

The dispute over these terms is about whether the claims <u>require</u> the presence of a support structure for direct infringement, or whether the claims are directed to the wire tensioning assembly hardware that is configured to be attached to several support structures. *See INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022) ("Our cases have held that sometimes a device only needs to be 'capable of operating' according to a claimed limitation, for a finding of infringement.  Other times, a device does not infringe unless it actually operates as claimed.  Whether infringement requires actual performance of the recited functions by the accused device depends on the claim language.") (citations omitted); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does.").

There is one independent claim 1 and it is for "A wire attachment and tensioning device." The claim then has several indented elements comprising that "device," which do not list a separate support structure.  A support structure is recited in these other elements to explain their intended operation.

Suncor submits that this description of the invention describes the hardware necessary *to be capable* to attach to the support structure (or multiple support structures). Ram Tail asserts that the claim language requires the device actually be attached in use to meet the literal claims.

The six Figures of the '253 Patent disclose the hardware structure of the device—an "assembly," and use generic block depictions of support structures to show how the claimed invention assembly may be implemented with existing or new posts. (Doc. 45-1) ("the present invention provides an assembly for easily attaching a wire to a rigid body, such as a free-standing bolt or a fixed surface of existing or new standard corner or end posts.").

The specification describes that only Figure 1 is a "schematic view of a wire attachment and tensioning assembly in accordance with the present invention[.]" As to the remaining figures that depict the device in Figure 1 in its intended environment, the specification "Description of Figures" (col. 4) states that each shows the device as attached to a surface.

| | |
|---|---|
| "FIG. 4 is a schematic illustrating multiple wire attachment and tensioning devices mounted to one surface of a railing post;" | Fig. 4 |
| "FIG. 5 is a schematic illustrating multiple wire attachment and tensioning devices mounted to two surfaces of a railing post;" | Fig. 5 |

| "FIG. 6 is a schematic illustrating multiple wire attachment and tensioning devices mounted to two posts at different elevations." |  |
|---|---|

In each case the specification distinguishes between the "wire attachment and tensioning device," which is what is claimed, and the posts to which the claimed invention is attached.

The Court agrees with Suncor that the claim refers to the support structure because the tensioning assembly operates when connected to some type of post. As such, "the tensioning assembly being fully rotatably attached to a support surface" would be understood by a POSA to be directed to the hardware device that <u>is configured to</u> and <u>is capable of</u> being attached to any support structure. (Doc. 45-1) ("The tensioning assembly is rotatably attachable to (or through) a support surface such as a railing post or a wall").

The Court construes both above terms as follows: "the swivel/cylindrical member is capable of being fully rotatable within the mounting plate when the mounting plate is attached to a support surface."

### IV.     Ram Tail's Invalidity Defense of Claim Indefiniteness

The '253 Patent in suit is presumed valid, 35 U.S.C. § 282, and invalidity for indefiniteness under 35 U.S.C. § 112 is a question of law that must be proven by clear and convincing evidence. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912, n.10 (2014). The Supreme Court clarified that the definiteness standard is satisfied when the patent claims "viewed in light of the

specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910. "Reasonable certainty does not require 'absolute or mathematical precision.'" *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). To the contrary, the Supreme Court recognized that "some modicum of uncertainty is the price of ensuring the appropriate incentives for innovation." *Id.* (internal quotations omitted). *Nautilus*, 572 U.S. at 909.

Ram Tail urges this Court to decide this question of law based on the claim construction submissions and oral hearing, in advance of a dispositive motion stage or trial. However, this Court has discretion to defer such a finding as premature before the end of discovery and particularly expert testimony. *ASM Am., Inc. v. Genus, Inc.*, 2002 WL 1892200, at *15 (N.D. Cal. Aug. 15, 2002), aff'd sub nom. ASM Am., Inc. v. Genus, Inc., 401 F.3d 1340 (Fed. Cir. 2005) ("The Court concludes that the Federal Circuit's statements that indefiniteness is intertwined with claim construction mean only that the Court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness, and not that the Court must determine indefiniteness during the claim construction proceedings.").

As Suncor urges, the Court will construe the disputed term as having their ordinary meaning, leaving the issue of validity for later summary judgment motions or trial. *See, e.g., Purdue Pharm. Prods., L.P. v. Actavis Elizabeth, LLC*, 2014 WL 2624787, at *6 (D.N.J. June 11, 2014), *aff'd*, 627 F. App'x 931 (Fed. Cir. 2016) (holding that a finding of indefiniteness would be premature in part due to the lack of expert testimony in the record); *DuraSystems Barriers Inc. v. Van-Packer Co.*, 2021 WL 4037826, at *7–9 (C.D. Ill. Sept. 3, 2021) (deferring the issue to summary judgment phase).

### V. Conclusion

In sum, the Court makes the following rulings on claim construction:

1. "A cylindrical member including a first threaded end and a second threaded end" is construed to have its plain and ordinary meaning.

2. "A threaded swivel engaging the cylindrical member" is construed as "a swivel that can be separate from or unitary with the threaded cylindrical member, with separate or common threading, respectively."

3. "A tensioning assembly being an independent component from the attaching means and the rigid body" is construed to have its plain and ordinary meaning.

4. "The tensioning assembly being fully rotatably attached to a support surface" and related term "A mounting plate including a center aperture through which the threaded swivel and cylindrical member are engaged . . . and an internal recess for rotatably receiving the threaded swivel to allow the cylindrical member and threaded swivel to freely rotate with respect to the mounting plate" are construed as "the swivel/cylindrical member is capable of being fully rotatable within the mounting plate when the mounting plate is attached to a support surface" and the terms otherwise have their plain and ordinary meaning.

5. The Court does not reach the issue of invalidity for indefiniteness, and the term "railing system including at least one wire attachment and tensioning device" is construed to have its plain and ordinary meaning.

**DONE and ORDERED** this 18th day of December, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE